United States v. Samuel Lasalle-Gonzalez. Good morning. May it please the court. My name is Alejandra Bird Lopez and I represent Appellant Lasalle in this matter. I'd like to reserve one minute for rebuttal, if I may. Yes. Thank you. Mr. Lasalle was convicted of possession of a firearm by a felon, but the bulk of Mr. Lasalle's sentence is based on enhancements for conduct which is insufficiently supported by reliable proof. Mr. Lasalle was neither charged nor convicted of this conduct by federal authorities. Federal courts are required to base their sentencing findings on reliable information, but here the court relied exclusively on a PSR which contained assertions which were unreferenced and conclusory. The PSR cites as its source, in general terms at the beginning, as the reports of investigation and all other available information. So we really have no idea what the probation officer relied on when he was preparing the report, which makes it impossible for this court or for the court below to have determined whether such sources are or are not reliable. The court should have refused to apply the enhancements, but did so nonetheless over defendant's objections. The government in its brief does not show or argue that the PSR facts were indeed reliable or based on reliable information. The government instead relies on case law of this circuit, U.S. v. CER, which held that generally, and that's an important qualifier, but quote, generally a PSR bears sufficient indicia of reliability to permit the district court to rely on it at sentencing. Now this does not mean that all PSRs are in their entirety entitled to a presumption of reliability. Ms. Barrett, what would we do with the defendant's statement at the hospital? I'm sorry? The defendant's statement at the hospital. What statement is being made reference to? Where he said that he was there because he was hungry and he had broken into a home. I'm not aware that that statement is part of the record that was before the court. I thought it was, but I'll look again. If it's contained in the PSR, then if it's not referenced, if it's not, normally a PSR should be, what the sentencing guidelines say, is that it should be based on sworn statements, on documents, and it should be referenced. And those specific statements should be referenced in the PSR if the court is going to rely on them. We don't know the, I'm sorry, go ahead. So I understand that the defendant objected to the application of the guidelines that the PSR laid out, but I didn't see any objection to any of the factual assertions in the PSR. Well, the government, we have to make a, the problem is the PSR doesn't, it contains assertions, but it doesn't reference them. And it doesn't cite the evidence that it's relying on to make those specific assertions. So where did he object to what you say were conclusory statements? In the objections to the PSR, in the written motion to the court, the defense said that the application of the enhancements without a jury determination or specific admission by the defendant, quote, violated his right to not be punished for facts not alleged or proven. And stated that in this particular case, there are no acceptable documents to establish that Mr. LaSalle was convicted of the facts that would form the basis of the enhancements. And then at sentencing, the defense specifically, the defense attorney specifically said the government hasn't specifically offered any proof that he was convicted of another felony or that he injured the officer. And I'm just, and then later he says, I'm just saying, judge, in order for you to punish him, for example, for injuring the officer, there should have been either government proof about that and it's not part of the plea agreement. So very clearly the defense counsel was stating, look, the problem is what we have here are a bunch of conclusory assertions and there's not a foundation on which to rely, on which we can really evaluate whether those statements are reliable. Now, I just want to go back a little bit to U.S. v. CERB because the facts of that case are not consistent with the facts of this case. In that case, the PSR relied specifically on a co-conspirator's documented admissions on prior convictions for specific charges. And the judge evaluated the PSR and accepted some of those conclusions and rejected others. So that's not what happened here. Basically, the court, without even really going through an exercise of determining if there was any reliable information or not, basically adopted the statement wholesale and made the finding that the enhancements were supported. Can I go back to Judge Thompson's question? It's been a while since I read this, but in my notes I wrote that the PSR at page 8 says that he made exactly the statement that Judge Thompson said he made. Well, I would have to go back and verify that. My notes indicate that he made a statement at the medical center to a Puerto Rico agent. If the court would allow me, I'll check the statement and on rebuttal I will certainly address that question. To continue, now, the government claims the defendant was obligated to provide countervailing proof against the PSR, but the problem is that the PSR is itself not the proof that is supposed to be relied on. There has to be some proof in order to countervail it. The problem is when the sentencing findings are based on unreferenced and unexplained evidence or information, this creates another problem for the defense, which makes it very difficult to determine what are they talking about, what are they relying on, and how can you countervail the proof if you don't know whether the statements or what they're relying on is adequate. At the point of the sentencing, Mr. LaSalle had already been charged in commonwealth proceedings, is that correct? Yes. He had been actually convicted. Okay. But the probation officer admitted in the PSR that she had not viewed the court documents in the case, so the sentences, I mean, we don't know exactly what the sentences were for. The thing is that here there was, he pled guilty in the state court case, we know that much, and there was an adjustment, it appears that there was an adjustment in the charges. There was an adjustment from the original charges to what he was actually convicted of. But until we know exactly what he was convicted of and we see the court documents to know exactly what he was convicted of and if there are specific facts that arise from those convictions, there's not anything reliable that we can really hinge the sentencing enhancements on. Now, I'd like to continue on to what I think is the more fundamental problem, which is a related problem in this case, which is that the sentence here imposes criminal punishment on conduct which is not part of the conviction in federal court. Now, the Supreme Court allows a sentence to be enhanced based on relevant conduct when such conduct reflects the manner in which the offense was committed. And those are the Witt and the Watts cases. And what we have learned since then in Apprendi and Alain is that it is clear, and I'm quoting the Apprendi case, beyond paradventure that due process and associated jury protections extend to some degree to determinations that go not to a defendant's guilt or innocence, but simply to the length of sentence. Now, here, the enhancements, there are a great many enhancements in the sentencing guidelines that are pertinent, obviously, to the manner in which an offense is committed. A role in the offense, whether sophisticated means were used, the vulnerability of the victim, extreme conduct in the commission of the offense. But here, I don't think that we can fairly characterize the enhancements as being pertinent to the manner in which the offense was committed, just because of the nature of the offense, which is possession. Here, we have increased punishment without conviction, which is antithetical to our values, contrary to the principles that undergird our system of criminal justice, and not to be jingoistic, but un-American. If we would not ever convict a person and incarcerate them for conduct which wasn't proven beyond a reasonable doubt of which they had admitted, then we shouldn't do it here on the basis of an enhancement, because the enhancements here really go beyond the actual criminal conduct for which this person was convicted. I see my time is up. Thank you. Good morning. May it please the Court, Julia Maconiatis for the government. The district court did not err in applying the three enhancements listed in the PSR that was not contemplated in the party's plea agreement. Specifically, with regard to the enhancement for the commission of an additional felony and the enhancement for seriously injuring the police officer, the district court properly relied upon the undisputed facts that were in the PSR. Now, it's clear that LaSalle indeed filed objections to his PSR, but those objections were purely legal in nature. Nowhere in the objections, which can be found on page 43 to 48 in his appendix, does he ever reference the offense conduct or the facts that underlie the application of these objections. His objections instead were wholly legal arguments that echoed the themes in Apprendi and in Alain that certain facts should be found beyond a reasonable doubt or submitted to the jury. Additionally, he makes other arguments that the facts were not in the plea agreement, that those facts were not included in the indictment. But nowhere in those objections or in his oral argument to the court at sentencing did he ever dispute any of the facts that were used to support those enhancements. And it would have been counterintuitive because in that same PSR, he admits that approximately 20 days earlier in Commonwealth Court, he pled guilty to aggravated assault, to aggravated robbery, and to the illegal appropriation of the goods that he had in that house. So it would have been counterintuitive to say, I didn't do that when he had already pled guilty beyond a reasonable doubt for that same conduct. So the district court properly relied upon those facts. And those facts, Your Honor, did include the statement that he made at Centro Medico, which is on page 8 of the PSR, that he broke into the house, that he stole jewelry, and that outside he shot the police officer. Moving on. When do we get into a tail wagging the dog situation? It's hard to understand when he had bargained for an agreement, which obviously the government honored, which called for a 30 to 37-month range to then go on to be sentenced because of conduct that was not found by a jury to be beyond a reasonable doubt to the maximum sentence. Your Honor, we would submit that this is not a situation where the tail is wagging the dog. Recently in this court's opinion in Doe, albeit in a footnote, a defendant tried to argue that relevant conduct in past drug distribution that severely increased his sentence, albeit within the prescribed statutory minimum and maximum range, was the tail that wagged the dog. And this court explicitly rejected that argument, stating that those concerns have been addressed by the Supreme Court both in Allain and both in Apprendi, because none of those enhancements altered either the mandatory minimum or the mandatory maximum. And in this case it has been found, and the Supreme Court has explained, that judicial fact-finding for the purposes of applying the guidelines doesn't violate due process, because what these enhancements here are doing are increasing his sentence due to the manner in which he committed the offense. This was a continuing offense. It's not just when he purportedly picked up the gun off the side of the road, which he found. That's not the end of his possession. His possession was more than that. His possession was taking the gun, was breaking into the house, was stealing the jewelry, was trying to flee, was seeing the cops, fleeing from the cops, when the cops see him purporting to try to lie on the ground only to shoot a cop in the face. So this was a continuing possession. And what here, the present offense, was carried out in a way that warrants that. And the Supreme Court has said that this is so, even though that related conduct may or may not, in and of itself, constitute a different offense. And in this case, during the sentencing hearing, counsel was discussing these same arguments to the court, and the court asked counsel, well, what if I apply a sentence to run concurrently? And counsel even said at that moment, well, Your Honor, as a practical matter, it's not going to matter. And that was at the sentencing hearing, which is at page 63 in the appendix. So this is not a situation where here the tail is wagging the dog. We are in the prescribed range of zero to ten years for 922G. Can I ask a question that's somewhat related? I can understand, I think, generally, that in the plea bargaining process, sometimes there's a time crunch. There are other pressures that come into play. And so not every single factual detail may necessarily be brought to the fore or considered at that point. And I take it there's an assumption on the part of the government and on the part of defense counsel that defense counsel will explain to the client that in a situation like this with this kind of plea, that the judge isn't going to be bound by the recommendations and relevant conduct is one thing that the judge may view differently than what the parties have, how the parties have viewed it. The other is criminal history, not necessarily applicable in this case. But more and more we're seeing appeals from plea agreements where the parties don't come to any agreement on criminal history, usually because the probation department, of course, hasn't done the full record check yet. And I take it there the assumption, at least on the part of the government, is that the defendant is in the best position to know what his own criminal history is and therefore they're not really asking the defendant to buy a pig and a poke. But I wonder if that's still true after Johnson, where lawyers don't even know whether a particular offense is going to change the guideline ranges or a mandatory minimum, et cetera. Do you know, is your office doing anything to try to cabin these sort of open-ended criminal history situations? Your Honor, I can't speak to what policies are now in place as to Johnson, but I do know that what Your Honor said was correct, that for the most part, at least, our district does not stipulate criminal history categories for the purpose that we need the benefit of the probation officer's inquiry into the criminal history. Whether in this case, looking at his criminal history, the parties in this particular case had a good faith belief that this individual was going to be a criminal history category of three, and this plea agreement actually locked the government into that, which is one of the reasons why we say that it was a very beneficial plea agreement, because it did tie the government to a specific range, which was irrespective of what his ultimate criminal history was going to be. But it doesn't bind the judge, right? No, it did not bind the judge. In this particular case, it did not bind the judge. And the judge did use the appropriate criminal history, which was the one that the parties in their good faith effort did. The difference here was the base offense level, not the total offense level. But in those cases where there's no agreement whatsoever on criminal history, and that's just left to be sorted out later, and it ends up resulting in many, many, many months, if not many years more in the sentence. Anyway, I just wanted to express the concern and hope that you'll carry the message back. Most definitely, Your Honor. Because it seems to me that there have to be ways to deal with that up front. Most definitely, Your Honor. Okay, good. Thank you. I'll bring the message to our office. Can I go back to one of your other answers? You were explaining that no real harm was done in this case because the sentences ran concurrently, concurrent with the state court proceedings. Suppose that it run consecutive. Would your response still be the same? Well, no, Your Honor. I would argue that it would still be within the court's discretion because these enhancements, the purpose was not to penalize the conduct of shooting the cop. But that's exactly what it does, isn't it? No matter how we may intellectually rationalize it, he's being punished in the state court for the same conduct that we're now punishing him for. It's the same scenario. Well, it's the same facts, yes. Same facts. I agree with that, Your Honor. In this case, the government's position is since there were these legal arguments and the court believed that these enhancements were properly applied because of relevant conduct, what the Supreme Court has said in Watts and in White, the court actually asked counsel, well, wouldn't this all go away? And counsel agreed that it would with a concurrent sentence because in the court's view, these enhancements were properly applied. And this would be a way to take into consideration some of his concerns. And it shows the court took into the totality of circumstances to put a sentence that, when you take into consideration what happened at the state court, was sufficient but not great enough. But I'm trying to figure out, since that's what happened in this case, but would it raise any due process concerns if, in fact, the judge within his discretion had decided to run it consecutively? Your Honor, the Supreme Court has explained in the Watts' opinion that the judicial fact finding, with a preponderance of evidence, does not violate due process. Granted, this case also was a 1995 case prior to Booker. And if I may just finish my line of thought, before Booker, the guidelines were mandatory. And at that point, that would tie the court's hands. Now, there's a different legal landscape because of Booker, and the court at any moment can vary from the guidelines if they feel that they are inappropriate in this case, based on any of the 3553A factors. So it would be our position that, given the Watts case, that beyond the preponderance of the evidence standard still comported with due process, now after Booker, where the court would not be bound by these guidelines, most certainly it would still withstand a due process challenge. Thank you. Your Honor, I'm very embarrassed to admit that I do not have a copy of the PSR with me because I only have a paper copy. I didn't have a digital copy. I would request the court's indulgence if I could file a supplemental letter just for the purpose of addressing the question. Of course. Thank you. I just wanted to make a couple of quick points. With respect to the argument that the defense counsel admitted that his arguments were purely legal, the purely legal argument is that there was no reliable information on which to base it. That is the argument that he was making. It wasn't the purely legal. And if you look at the colloquy or the statements the defense counsel made when he said that we had a legal difference of opinion, that was the difference of opinion was whether or not there was concrete, factual, reliable evidence on which to or information on which to base it. In this case, the problem is that the enhancements overshadow the sentence for the prime conduct, and clearly the enhancements go to much more serious criminal conduct than the mere possession, the mere possession offense for which Mr. LaSalle was convicted. And the problem is that although we originally had a standard of preponderance of the evidence for such enhancements in Witt and Watts, later now we have the Apprendi case, which does tell us that due process and the jury trial right are implicated by fact finding, which goes to making a sentence longer. I would argue that that is especially the case here where the enhancements really overshadow the level. I see that my time is up. If there are any further questions, I'd be happy to answer them. No, thank you. Okay, thank you very much.